## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

**Civil Action No. 1-24-cv-00135**

**RANCHES OF THE WEST, INC.**

      **Plaintiff,**

      **v.**                               **JURY TRIAL DEMANDED**

**INTUIT INC.**

      **Defendant.**

---

## COMPLAINT

---

COMES NOW the Plaintiff, Ranches of the West, Inc., (hereinafter "ROW") by and through its counsel of record, the law firm of Peasley & Armstong LLP, and for its Complaint and Jury Demand against Defendant Intuit, asserts and alleges as follows:

### I.   PARTIES

1. Plaintiff ROW is a Wyoming corporation with its principal place of business at 1965 Cold Springs Rd., Douglas, WY 82633, at all times relevant to the facts and claims set forth in this matter.

2. Defendant Intuit ("Intuit") is a Delaware Corporation with its corporate headquarters located at 2700 Coast Ave. Mountain View, CA 94043.

### II.  VENUE AND JURISDICTION

3. Venue is proper in Federal District Court of Wyoming, pursuant to 28 U.S.C. § 1391(b)(2).

4. ROW is a resource, land and ranch manager for numerous (over 60) third party entities in Montana and Wyoming, and in years past, in other states and countries.

5. Reid L. Rosenthal is the President of ROW.

6. This Court has personal jurisdiction over the parties to this lawsuit because the events took place within the state of Wyoming.

7. This Court has subject matter jurisdiction over the Plaintiff's claims alleged in this Complaint because there is diversity between the parties and the amount sought by Plaintiff exceeds $75,000. 28 U.S.C. §§ 1332.

### III. BACKGROUND FACTS

8. ROW retained the services of Janet Christensen (hereinafter "Christensen") to handle its bookkeeping.

9. ROW purchased QuickBooks TM ("QuickBooks") accounting software for use in and to assist Christensen's management of ROW's books.

10. Intuit Inc. is a company that develops various financial, accounting, and tax-related software products, and QuickBooks is one of the products developed by Intuit.

11. At Christensen's request, ROW provided Christensen with access to its license to use the QuickBooks accounting software to manage the books and finances for ROW.

12. Christensen was expressly not authorized to administrate and control the license and account in any name but that of ROW.

13. During the entire time that Christensen worked for ROW, ROW purchased and paid for the QuickBooks accounting software and/or licenses.

14. At all relevant times, ROW owned the QuickBooks accounting software and licenses that Christensen used for ROW business.

15. The QuickBooks license number for ROW, purchased and used for ROW business for more than a decade, is and has always been 7812-5879-4159-728 (hereinafter "QB728").

16. ROW now knows the real license number is QB728, but at the time of the events described in this Complaint, it did not know that information as Christensen deliberately withheld it from ROW.

17. In July 2021, Christensen resigned without any notice and ROW promptly accepted such resignation.

18. After Christensen resigned, she refused to provide ROW with physical or electronic versions of its books, including QB728.

19. Christensen refused to relinquish, provide access, or log-in information to, or transfer administration of, the QuickBooks license which ROW purchased and continued to pay for, despite repeated attempts to acquire QB728.

20. This prevented ROW access to certain electronic files associated with work Christensen performed on behalf of ROW and afforded her continuing access to and control of and over such records.

21. Following Christensen's departure, ROW uncovered significant financial indiscretions committed by Christensen.

22. Though Intuit was fully informed of the grave and costly situation repeatedly over the course of a year, Intuit's actions, or lack of action, allowed Christensen to continue to gravely damage ROW by delaying accounting and tax filings by ROW and its clients, among other things, and allowing Christensen to continue her course of illegally falsifying bookkeeping information, deleting records and concealing information about the true nature of her self-payments, transfer of unauthorized funds, issuance of

unauthorized checks, and unauthorized purchases for her own account using the credit cards of ROW as more fully set forth in the Third Amended Complaint filed in the Federal District Court for the District of Montana, case number CV-21-65-BU-BMM-JTJ [Doc. 116] on September 2, 2022, and captioned "Ranches of the West, Inc., a Wyoming Corporation, plaintiff v. Janet Christensen, defendant."

23. Christensen exercised unauthorized control of the QuickBooks accounting software by placing the software and license in her name – including all login and access information and refusing to provide access to the accounts and return the software and the associated electronic back up and other files to ROW upon her resignation.

24. At no time was Christensen authorized to put QB7828 in her own name.

25. By placing the QuickBooks software and access to it in her name, Christensen also exercised unauthorized control of the QuickBooks accounting software by using the program to handle the books of other clients of hers, without the knowledge or permission of ROW.

26. As of July 30, 2021, and nearly three weeks after her resignation, Christensen retained exclusive access to QB728.

27. On July 31, 2021, ROW initiated a case with QuickBooks to switch the primary account holder from Christensen to under ROW's control, called a "Change Request Case Number."

28. On August 3, 2021, ROW purchased an emergency license after Christensen failed to return access to QB728.

29. That emergency license number is 5015-6850-6260-585 and ROW bookkeepers used that license to start recreating files pending recovery of the software converted by Christensen.

30. On or about August 17, 2021, ROW sent Defendant a letter informing them QB728 was owned by ROW, had at all times been paid for by ROW, that Christensen was not an owner, officer, director, or member of any account holder and that it was illegal to allow Christensen to place QB728 in her personal name, with Christensen being the sole person allowed to control the account.

31. The August 17, 2021, letter from ROW to Defendants further advised Defendant that:

   a. ROW's books and records could not be retrieved, proprietary information including real estate information on assets valued in the nine figures was exposed, at risk, and available to non-authorized persons;

   b. and that ROW was incurring damages of several thousands of dollars each day since July 14, 2021, as hundred hours of time by various personnel at rates ranging from $30.00 to $300.00 per hour were attempting to get Defendant to correct the fraud they allowed to begin with;

   c. and that ROW was further incurring thousands of dollars per day in damages trying to recreate their books as they had no access to QB728; and that

   d. Intuit's actions, and inactions, were interfering with cash management, account and tax filings and preparation for numerous individuals and entities.

32. Approximately two days after ROW sent the August 17, 2021, letter to the Defendant, it released access to only three of the twenty-three entities using QB728 (Ranches of the

West, Big Country Road, and Big County Ranch), but continued to refuse access and control over, or even reveal the license number of QB728.

33. The release by the Defendant was only for access, not control, of QB728, which access was limited to the use of the temporary license, QB585.

34. This was critical, because the Defendant did not release ROW's license, nor the primary administrative control of QB728.

35. Over time, ROW had to buy band aid programs from Intuit at a cost of thousands of dollars as the Defendant's "release" only allowed secondary administration of QB728, yet still allowed Christensen full access and complete control of QB728 and all accounts.

36. As of September 13, 2021, Christensen still had not assigned administrative rights to QB728 to ROW or disclosed the real license number to ROW.

37. As a result, ROW initiated an investigation with QuickBooks, Case # 569471429

38. QuickBooks reported, while still concealing QB728, that as of September 13, 2021, QB728 was linked to and paid by ROW's credit card (MC #XXXX-XXXX-XXXX-4885, hereinafter "Credit Card"), but Janet Christensen was the license holder, that Christensen's email janetgchristensen1976@yahoo.com was the primary email assigned to the license and disclosed that the Defendant's position was that ROW was not the license holder.

39. On September 21, 2021, ROW was again officially denied access to QuickBooks by Intuit Customer Success.

40. Contemporaneously, Christensen still listed herself, her home address, her phone number, and her email as primary authorized user and owner on QB728, later changing the license owner's name to that of one of Christensen's non-ROW clients.

41. Further, Christensen still had sole and complete control over the password, email entry, primary administrative control of and for QB728, including the ROW confidential information consisting of the personal tax asset finance and records of ROW, Rosenthal, and more than fifty-three third party clients of theirs ("ROW Confidential Information").

42. On May 23, 2022, ROW was charged $543.14 for QB728, which ROW also paid in previous years, including in May 2021.

43. Upon a call to Intuit, ROW learned that "Tri-Valley Drilling", a third-party client of Christensen's, was named on the invoice with Christensen's email and phone number still tied to the ROW QB 728 account, despite ROW's payment.

44. QuickBooks failed to disclose the license number out of privacy concerns for "the owner" and the invoices did not show, display, or contain the license number.

45. As of June 2022, QuickBooks still had Christensen, her address, her email and her phone number as being in control of QB728.

46. During this time, QB728 was also linked to the ROW Credit Card, meaning ROW was, as it always had, been paying for QB728.

47. On June 13, 2022, QuickBooks, due to Christensen's "ownership" of the license again refused to return QB728 to ROW and ROW was unsuccessful in transferring the license because of Christensen alleged ownership of the license.

48. ROW was forced to obtain a temporary restraining order in federal court to prevent Christensen from having access and control over QB728.

49. This temporary restraining order came at a great cost to ROW, which had to spend significant time in litigation, incurring attorney fees, and paying for expert witnesses.

50. These legal costs alone, which ROW should never have had to incur, totaled in the hundreds of thousands of dollars

51. Ultimately, a federal court compelled Christensen to provide full administrative access to and control of QB728 to ROW, however, Intuit, despite being notified and provided with a copy of that order, still refused to do anything.

52. On June 27, 2022, ROW retrieved administrative access and converted rights to QB728 directly from Christensen and her attorney.

53. It took one year from the time that ROW first alerted Intuit to the problems with QB728 until it was able to retrieve administrative access and converted control and rights to QB728, but administrative access and converted control and rights to QB728 was never provided by Intuit.

54. During this period of time, two tax seasons lapsed due to Intuit's intentional failure to provide ROW with administrative access to its own QuickBooks account

### IV. CLAIMS AND CAUSES OF ACTION

<u>COUNT I – Conversion</u>

55. ROW incorporates paragraphs 1 - 54 as if fully set forth herein.

56. Under Wyoming law, conversion is defined as any distinct act of dominion wrongfully executed over another's property in denial of his right or inconsistent therewith. *Satterfield v. Sunny Day Resources, Inc., Wyo.*, 581 P.2d 1386 (1978), *cert. denied* 441 U.S. 938, 99 S. Ct. 2153, 60 L. Ed. 2d 1040 (1979); *Western National Bank of Casper v. Harrison, Wyo.*, 577 P.2d 635 (1978).

57. Here ROW, at all times, paid Intuit for QB728.

58. The purpose of purchasing QB728 was for the sole and exclusive benefit of ROW.

59. Intuit knew at all material times that ROW paid for QB728.

60. Christensen, while she was a bookkeeper of ROW, only had authority to use QB728 for the benefit of ROW.

61. Christensen never had the legal right or authorization to personally own, control or retain QB728, or the ROW Confidential Information.

62. Christensen never paid for QB728.

63. As such, legal title to QB728 at all times resided with ROW.

64. At all times, ROW had the right to possess QB728 as it paid for QB728 and the intent of obtaining QB728 was for the sole benefit of ROW.

65. No later than August 17, 2021, ROW informed Intuit, in writing, that Christensen had exercised complete control and dominion of QB728 from the user, or licensees, end.

66. Intuit was aware at this time that ROW had at all times paid for QB728, and that Christensen had never paid for QB728.

67. Despite being informed in writing that ROW was the owner of QB728, and that Christensen had exercised complete control and dominion of QB728 from the users end (the licensees end), Intuit refused to grant administrative control of QB728 to ROW.

68. Instead, Intuit illegally allowed Christensen to maintain complete administrative control over, and access to, QB728 and the ROW Confidential Information, which Christensen and her counsel copied and placed on multiple devices, including altering ROW's Confidential Information.

69. As such, Intuit exercised complete control over QB728 as the licensor.

70. Intuit had the ability to grant administrative control and access over QB728 to ROW.

71. Instead of granting ROW administrative control and access over QB728, Intuit took the

position that Christensen was the owner of QB728.

72. Intuit's refusal to provide ROW administrative control and access prevented ROW from being able to use QB728.

73. Therefore, Intuit exercised dominion over QB728 in a manner which denied ROW its rights to use and enjoy the property.

74. This allowed Christensen, who did not have legal title to QB728, to maintain complete access to and administrative control over QB728.

75. Despite ROW making numerous written demands for possession of administrative control of QB728, Intuit refused to provide access to and administrative control of QB728 to ROW.

76. After making a written demand, ROW's legal counsel, Adrienne Tranel, called Intuit to try to discuss the matter by phone, voice-to-voice.

77. Ms. Tranel was not successful in her discussions with Intuit, and as a result, turned over communications to ROW's president, Mr. Rosenthal.

78. On June 6, 2022, ROW first spoke to the law firm representing Intuit.

79. During that phone call, Intuit's law firm acknowledged that ROW was the rightful owner of QB728.

80. Intuit's law firm then admitted that Intuit's policies and procedures regarding a situation like this were wrong, and as such were to blame for ROW not getting its property back.

81. After Intuit was informed that ROW was the rightful owner of QB728 and Intuit refused to provide ROW with administrative access to QB728, ROW still had to pay the licensing fee for QB728 to attempt to protect ROW's Confidential Information.

82. Even after ROW paid Intuit for the licensing fee for QB728 in May 2022, again after

Intuit had been notified in writing of the problem in August 2021 and the subsequent telephone calls between ROW and counsel for Intuit, Intuit still refused to provide ROW with administrative control of QB728.

83. As described above, ROW suffered significant damages because of Intuit's direct participation in ROW's loss of access to and administrative control of QB728 from July 2021 to June 2022.

<u>COUNT II – Conspiracy</u>

84. ROW incorporates paragraphs 1 - 83 as if fully set forth herein.

85. In this case, Intuit conspired with Christensen to keep ROW from obtaining administrative control of QB728, and to instead allow Christensen to personally keep and maintain sole access to and administrative control of QB728 after Intuit was informed that Christensen was never authorized to place QB728 in her name, that Christensen was no longer the bookkeeper of ROW, that Christensen no longer had any authority to act in any capacity on behalf of ROW, and that at all material times ROW had paid for QB728.

86. Because Christensen had no legal right to QB728 at all material times, it was unlawful to allow Christensen to maintain administrative control of QB728 and to deny ROW, as the rightful owner of QB728, administrative control of, and access to, QB728.

87. During the relevant time period, Christensen also used QB728 for other businesses that were her personal clients, and not affiliated with ROW.

88. Intuit was aware that Christensen illegally possessed QB728 and that she was using it for nefarious personal financial purposes and for businesses that were not affiliated with ROW, including refusing to return, making more than 23 copies, and altering ROW's Confidential Information.

89. Despite this knowledge, Intuit still allowed Christensen to maintain administrative control of QB728 and to deny ROW the right to its property, the ROW Confidential Information, and to continue even the license number of QB728 from ROW.

90. Intuit had the ability to surrender administrative control of QB728 to ROW.

91. Christensen had the ability to surrender administrative control of QB728 to ROW.

92. Despite Intuit's knowledge that ROW was the rightful owner of the administrative rights to QB728, it refused to provide ROW with the administrative rights to QB728 during the relevant time period.

93. Despite Christensen's knowledge that ROW was the rightful owner of the administrative rights to QB728, she refused to provide ROW with the administrative rights to QB728 during the relevant time period.

94. As such, both Christensen and Intuit took overt steps to conspire to keep ROW from having administrative control of QB728 during the relevant time.

95. As a direct and proximate cause of the conspiracy, ROW suffered damages, described in detail above, in an amount to be proven at trial, but which is not less than $1,200,000.00 (one million two hundred thousand dollars and 00/100).

<u>COUNT III – Fraud</u>

96. ROW incorporates paragraphs 1 - 95 as if fully set forth herein.

97. Intuit represented to ROW that since ROW was paying for QB728, ROW would in fact be the owner of the QB728.

98. Intuit confirmed its representations to ROW that ROW was the owner of QB728 each time ROW renewed the license for QB728.

99. Despite these representations as the person who used the ROW credit card to purchase QB728 for ROW, Christensen, was able to put QB728 in her personal name, with her personal information, and with a password and email of her choosing, thus exercising complete control, sole access, and administrative rights.

100.     ROW believed the representation from Intuit that it would have administrative rights to QB728 and based upon those representations, it believed that since it was the one paying for QB728 that it would in fact have administrative rights to QB728.

101.     ROW relied on these representations by Intuit, inducing it to purchase QB728.

102.     As a result of Intuit's false representation, Plaintiff purchased QB728.

103.     Contrary to these representations made by Intuit, it took the position that Christensen, not ROW, owned the administrative rights to, and exclusive control over, QB728.

104.     As a result, when Christensen resigned from ROW, Intuit maintained that she had sole access to and control over QB728 and that she owned the license, accounts (including ROW's Confidential Information) and administrative rights to QB728, not ROW.

105.     ROW was led to believe that if it opened a "Change Request Case Number" that it could quickly and easily resolve who had administrative rights to QB728.

106.     ROW relied on that representation and filed "Change Request Case Number" 569471429 on September 13, 2021.

107.     Filing "Change Request Case Number" 569471429 with Intuit did nothing, as Intuit maintained its position that Christensen owned the license and controlled all administrative rights to QB728.

108.    Intuit, even after it had received definitive proof that ROW, not Christensen, was the owner of the administrative rights to QB728, and even after the federal court in Montana ruled that Christensen must turn over full access, control and administrative rights to QB728 to ROW in late June 2022 including ROW's Confidential Information, Intuit still withheld administrative rights, login and even the license number to QB728 from ROW.

109.    Intuit represented to ROW that if it, not Christensen, renewed license QB728 in May 2022, that ROW would acquire administrative rights to QB728.

110.    ROW relied on this, and in May 2022, it, not Christensen, paid for and renewed QB728 as it had in all previous years.

111.    Despite this, Intuit still withheld administrative rights, access to, and control over QB728 from ROW, including the ROW Confidential Information.

112.    As described in detail above, ROW suffered damages, in an amount to be proven at trial, but not less than $1,200,000.00 (one million two hundred thousand dollars and 00/100), as a result of Intuit's fraud.

## PRAYER FOR RELIEF

**WHEREFORE**, ROW requests that judgment be entered in favor of ROW and against Intuit, in an amount to fairly compensate their damages as set forth above to be determined at trial, court costs, and statutory interest from the date this cause of action accrued or as otherwise permitted under Wyoming law and for such other and further relief as this Court deems just and proper and/or Plaintiff prays for the following relief:

(a) For an amount which will reasonably compensate ROW for all actual and/or economic damages;

(b) For non-economic damages, as permitted by law;

(c) For exemplary damages, as permitted by law;

(d) For attorney fees, as permitted by law;

(e) For pre- and post-judgment interest, as permitted by law; and

For such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: July 10, 2024

/s/ Michael R. Armstrong

Michael R. Armstrong, WSB No. 7-5738
Peasley & Armstrong LLP
119 S. 3rd Street
Douglas, WY 82633
Phone: (307) 358-4505
Email: mike@peasleylaw.com
Counsel for Plaintiff