**FILED**

11:20 am, 3/6/25

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

RANCHES OF THE WEST, INC.,

Plaintiff,

vs.                                                          Case No.  1:24-CV-00135-SWS

INTUIT INC.,

Defendant.

## ORDER COMPELLING ARBITRATION

This matter is before the Court on Defendant's *Motion to Compel Arbitration* (the "Motion"). ECF No. 18. Plaintiff opposes the Motion and filed a response (the "Response") arguing it was not a party to the arbitration agreement.[1] ECF No. 19. After reviewing the Motion, the Response, Defendant's Reply, and otherwise being fully advised, the Court concludes that the Motion should be GRANTED and this matter be stayed pending resolution of the arbitration.

### BACKGROUND

Ranches of the West, Inc. ("Plaintiff")—a resource, land, and ranch management company—hired Janet Christensen ("Christensen") to handle its bookkeeping and purchased QuickBooks accounting software, license number QB728, to manage its financial information.

---

[1] Plaintiff filed its Response seven days late. *See* U.S.D.C.L.R. 7.1(b)(1)(B) ("Each party opposing the motion shall have fourteen (14) days after the filing of the motion to file a written response[.]"). On October 26, 2024, Plaintiff filed an *Unopposed Belated Motion for a Seven Day Extension of Time to File Response to Defendant's Motion to Compel Under the Federal Arbitration Act*. ECF No. 21. As Plaintiff's opposition to the Motion was expressed in the Motion itself, and Plaintiff's request for an extension is unopposed, the Court finds that good cause exists to grant the motion for extension. Plaintiff's Response will be treated as timely.

ECF No. 1 at 2. At Christensen's request, Plaintiff provided her with the access code to use the QuickBooks software to facilitate her accounting on its behalf. *Id.* In July 2021, Christensen resigned abruptly. *Id.* at 3. She subsequently refused to provide Plaintiff with the physical or electronic versions of its financial records, including the QuickBooks information. *Id.* According to the complaint, Christensen placed "the software and license in her name — including all login and access information and refus[ed] to provide access to the accounts and return the software and the associated electronic back up and other files to [Plaintiff] upon her resignation." *Id.* at 4.

Intuit Inc. ("Defendant") is the developer of the QuickBooks accounting software. *Id.* at 2. Plaintiff alleges that it sought Defendant's assistance in accessing its files, but Defendant failed to act to meaningfully protect Plaintiff's rights to its financial information or the software it had purchased. *Id.* at 5–6. On August 3, 2021, Plaintiff purchased an "emergency license" ("QB585") to attempt to recreate files pending the recovery of its original license. *Id.* at 4–5. On July 10, 2024, Plaintiff filed suit against Defendant. *Id.* at 1. In its Complaint, Plaintiff raises claims of conversion, conspiracy, and fraud. *Id.* at 8–12.

On September 25, 2024, Defendant filed the present Motion seeking to compel arbitration. ECF No. 18 at 1. Defendant contends that all users of the QuickBooks software consent to arbitration for disputes, as they are required to click a box confirming their acceptance of the license agreement—which includes an arbitration clause—before they can access the software. *Id.* at 4. It argues that because the Plaintiff purchased and authorized Christensen's use of the QuickBooks software, the Federal Arbitration Act governs this matter. *Id.* at 8–9. Plaintiff filed its Response on October 16, 2024. ECF No. 19 at 1. It contends that Defendant's failure to make a showing of who specifically installed the software (and

presumably, accepted the license agreement) is fatal to their motion, because they cannot prove that Christensen had the authority to contractually bind Plaintiff. *Id.* at 4.

Defendant filed its Reply on October 22, 2024, contending that Plaintiff's Response is contradicted by the allegations set forth in Plaintiff's Complaint, specifically the allegations that Plaintiff purchased and owned the QB728 license and expressly authorized Christensen to access the license and software to manage Plaintiff's books and finances. ECF No. 22. at 2 (citing ECF No. 1 ¶¶ 9, 11, 12, 14, 15 & 64). Defendant further contend that since Christensen could only access the QuickBooks software by accepting the license agreement on behalf of Plaintiff, the Complaint establishes that Christensen accepted the 2021 license agreement, at the direction of, and on behalf of Plaintiff. Therefore, Plaintiff is bound by the arbitration clause in the terms and conditions. ECF No. 22 at 4.

## RELEVANT LAW

Federal and public policy favors enforcement of valid arbitration agreements. *Shearson/Am. Exp., Inc., v. McMahon*, 482 U.S. 220, 226 (1987). When filing a motion to compel arbitration, the movant bears the initial burden of establishing entitlement to arbitration. *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1336 (D. Kan. 2000). A party may establish entitlement to arbitration by demonstrating the existence of a valid and enforceable agreement to arbitrate. *Id.* The existence of an arbitration agreement "is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes— but only those disputes—that the parties have agreed to submit to arbitration." *Avedon Eng'g Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997). "The Federal Arbitration Act

requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C. § 2).

Online contracts, referred to as "clickwrap agreements," are no different than traditional contracts, and have been accepted and addressed by a number of courts. As stated by the Ninth Circuit:

> The most straightforward application of [contract formation] principles in the online world involves so-called "clickwrap" agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating "I agree" in order to proceed. In that scenario, the consumer has received notice of the terms being offered and, in the words of the Restatement, "knows or has reason to know that the other party may infer from his conduct that he assents" to those terms.

*Berman v. Freedom Fin. Network*, LLC, 30 F.4th 849, 856 (9th Cir. 2022) (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014); (quoting Restatement (Second) of Contracts § 19(2)). Courts have routinely found clickwrap agreements enforceable. *See, e.g.*, *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 28–32 (2d Cir. 2002); *Clements v. Alto Trust Co.*, 685 F. Supp.3d 1249, 1260 (D.N.M. 2023); *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012); *Ming Hong Zheng v. Halliburton Energy Servs., Inc.*, No. 23-CV-00098-ABJ, 2023 U.S. Dist. LEXIS 206682, at *10–13 (D. Wyo. Oct. 30, 2023) (endorsing clickwrap contracts under Wyoming law).

When determining whether the parties established a valid arbitration agreement, a court applies the contract formation laws of the relevant state. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Harding v. First Cash Fin. Servs., Inc.* 465 F.3d 470, 475 (10th Cir. 2006) ("Generally, courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a

dispute.") (internal quotation marks omitted). Because Wyoming is the forum state, Wyoming choice-of-law rules apply. A Wyoming court "will enforce a contract's choice-of-law provision and apply foreign law when doing so is not contrary to the law, public policy, or the general interests of Wyoming's citizens." *Denbury Onshore, LLC v. APMTG Helium LLC*, 2020 WY 146, ¶ 24, 476 P.3d 1098, 1105. The license agreement's choice-of-law provision declares that "California state law governs this Agreement." ECF No. 18-2 at 8. The choice of law provision does not run contrary to Wyoming law, policy, or general interests.

To form a contract under California law, the parties must manifest their mutual assent to the terms of the agreement. *Specht*, 306 F.3d at 29. Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct. *Id*. However, the conduct of a party is not effective as a manifestation of his assent "unless he knows or has reason to know that his conduct may cause the other party to understand that he assents." Restatement (Second) of Contracts § 19 (AM. L. INST. 1981).

"The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Buckner v. Tamarin*, 119 Cal. Rptr.2d 489, 490-91 (2002) (citations omitted). However, there are circumstances where someone can bind another person to an arbitration agreement when an agent is acting on behalf of a principle. *Id.* at 491. "An agent is one who represents another, called the principal, in dealings with third persons." CAL. CIV. CODE § 2295.

In California, an agency is "either actual or ostensible." CAL. CIV. CODE § 2298. An agency is actual "when the agent is really employed by the principal." CAL. CIV. CODE §

2299. Actual authority "is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." CAL. CIV. CODE § 2316. An agency is ostensible "when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300 "Ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the belief the agency exists." *Buckner*, 119 Cal Rptr.2d at 491.

**ORDER OF THE COURT**

### I.     Plaintiff is bound by the 2021 license agreement.

Defendant bears the burden of establishing Plaintiff is bound by the relevant arbitration agreement. *Klocek*, 104 F. Supp. 2d at 1336. In order to download and utilize the Quickbooks software after the release of the 2021 license agreement, Plaintiff or Plaintiff's agent would have been required to accept the terms and conditions of the license. ECF No. 18-1. Defendant declares that, for that reason, it does not need to identify the specific individual who accepted the License Agreement. ECF No. 20 at 2. As long as it can establish that the software was purchased, installed, and utilized by an entity or for an entity, that entity is bound. *Id.* The Court agrees.

Plaintiff's complaint is premised on the fact that the disputed QB728 license was "purchased and used for [Plaintiff's] business for more than a decade" before Plaintiff lost access in 2021. ECF No. 1 at 3, 6. Plaintiff alleges that Christensen had registered herself as the primary user and owner of QB728, and eventually changed the name of the license

6

owner to Tri-Valley Drilling. *Id.* at 7. Plaintiff does not specify when exactly Christensen was listed as the primary account holder for QB728, but states that she resigned "abruptly" in July 2021. *Id.* at 3.

According to Defendant, the 2021 license agreement was accepted for QB728 on June 1, 2021. ECF No. 18-1 at 2. This means that the agreement was accepted before any dispute over Plaintiff's control of QB728 arose. ECF No. 1 at 3; ECF No. 18-1 at 2. Although Plaintiff originally purchased and installed QB728 more than a decade earlier, it does not matter whether the clickwrap agreement, which includes the arbitration clause, differs from that in the 2021 license agreement because the 2021 license agreement contains an integration clause which explicitly states that it supersedes "all prior understandings, communications and agreements, oral or written, regarding its subject matter." ECF No. 18-2 at 9. Prior writings include the clickwrap agreement which covers the same subject matter – the method for resolving disputes. Thus, the 2021 license agreement attached to Plaintiff's Complaint governs.

Plaintiff purchased and utilized the Quickbooks software for more than ten years. ECF No. 1 at 2. The stated purpose of this purchase was to enable Christensen to manage Plaintiff's books and finances. If Christensen or whoever installed the software did not accept the license agreement, they would have been unable to facilitate this purpose. The individual in charge of the installation was therefore imbued with both actual and ostensible authority to do what was necessary to install and use the software on Plaintiff's behalf.

Based on the Court's research, the most analogous case to the issues raised in the Motion and Plaintiff's Response is *Delaware River Waterfront Corp. v. Wellspring*

7

*Software, Inc.*, No. CV22-1905, 2022 WL 17869139 (E.D. Pa. Dec. 22, 2022). In that case,

Plaintiff Delaware River Waterfront Corporation ("DRWC") obtained accounting software

from Defendants Sage Software, Inc. ("Sage") and Wellspring Software, Inc.

("Wellspring"). DRWC used the Sage software to manage its accounts payable system and

used Wellspring's software to print company checks. *Id*. at *1. DRWC filed a complaint

seeking to recover $2.4 million dollars that had been embezzled from the company using

the Sage and Wellspring software. *Id*. Sage filed a motion to dismiss contending that

DRWC agreed to arbitrate all claims arising out of its license agreement with Sage. *Id*. In

response, DRWC asserted it was unaware of the terms of the Sage license agreement

because the Sage software had been installed by a third-party, KasTech, Consulting, Inc.

("KasTech") and it was therefore not bound by the arbitration provision contained in the

license agreement.[2] *Id*. at *8.

The Court in *Delaware River Waterfront Corp*. found the arbitration provision in

the Sage license agreement valid and enforceable against DRWC. Specifically, it found

that KasTech acted as DRWC's agent within the scope of its agency when it installed the

software and agreed to the terms of the license agreement. *Id*. As the Court explained,

> [u]nless KasTech agreed to the terms of the Sage End User License
> Agreement, it could not install the software. What [it] did was proper, usual
> and necessary to the installation of the program. Therefore, KasTech had the
> implied authority to do so. . . . Because DRWC granted KasTech . . . the
> implied authority to agree to the Sage End User License Agreement, we find
> DRWC agreed to arbitrate.

*Id*. at *9-10.

---

[2] Installation of the Sage accounting software involved a clickwrap agreement. *Id*. at *7.

Here, the Court finds that Plaintiff is bound by the 2021 license agreement and the arbitration clause contained therein based on the allegations in Plaintiff's Complaint that it "provided Christensen with access to its license to use the QuickBooks accounting software to manage the books and finances for [Plaintiff]" and "Christensen was expressly [] authorized to administrate and control the license and account in [] [the] name [] of [Plaintiff]." ECF No. 1 at ¶¶ 11 & 12. Unless Christensen had agreed to the terms of the license agreement in QB728, she could not have installed and used the QuickBooks software for managing Plaintiff's books and finances. What Christensen did was necessary for the installation of the QuickBooks software. Christensen had the implied authority to agree to the QB728 license agreement and the arbitration clause contained therein. Accordingly, this Court finds Plaintiff is bound by the arbitration clause set forth in the terms and conditions of the QB728 license agreement.

THEREFORE, IT IS ORDERED Defendant's Motion to Compel Arbitration is GRANTED.

IT IS FURTHER ORDERED that Plaintiff and Defendant shall arbitrate in accordance with the arbitration agreement attached to Defendant's Motion as Exhibit 2. ECF. 18-2.

IT IS FURTHER ORDERED that this case shall be stayed pending resolution of the arbitration.

IT IS FURTHER ORDERED that the parties shall file a joint status report on or before April 30, 2025, and every sixty days thereafter informing the Court of the status of the arbitration.

DATED this 6th day of March, 2025.

Scott P. Klosterman
United States Magistrate Judge